UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH BAILEY,                         Case No.  14-12002

          Plaintiff,               Linda V. Parker
v.                                  United States District Judge

CITY OF ANN ARBOR, *et al*,         Stephanie Dawkins Davis
                                  United States Magistrate Judge

          Defendants.
_____/

**REPORT AND RECOMMENDATION**
**MOTION TO DISMISS (Dkt. 28)**

## I.    PROCEDURAL HISTORY

Plaintiff filed a complaint on May 19, 2014.  (Dkt. 1).   Judge Parker previously granted a motion to dismiss by all defendants, but invited plaintiff to file a motion for leave to amend the complaint.  (Dkt. 16).  Plaintiff filed a motion for leave to amend the complaint, which was granted.  (Dkt. 21).  The first amended complaint was filed on January 5, 2016.  (Dkt. 22).  On January 19, 2016, defendants filed their answer to the complaint.  (Dkt. 23).  The parties filed their joint discovery plan on February 4, 2016.  (Dkt. 26).  Judge Parker held a scheduling conference on February 11, 2016, but did not set any dates because defendants were going to file a Rule 12(c) motion by February 26, 2016.  *See* Minute Entry dated February 11, 2016.  Defendants filed their motion to dismiss

on February 25, 2016, which was referred on March 8, 2016. (Dkt. 28, 29). On March 17, 2016, Judge Parker entered an order staying discovery pending a decision on the motion to dismiss. (Dkt. 20). Plaintiff filed his response to the motion to dismiss on March 21, 2016 and defendants filed their reply on March 30, 2016. (Dkt. 32, 33). The parties filed their joint statement on April 28, 2016. (Dkt. 34).

For the reasons set forth below, the undersigned **RECOMMENDS** that defendants motion to dismiss be **GRANTED** in part as to plaintiff's excessive force claim and related *Monell* claims and **DENIED** in part as to the remainder of plaintiff's claims in the amended complaint.

## II.   LEGAL STANDARDS

### A.   Standard of Review

The standard of review for a motion for judgment on the pleadings under Rule 12(c) is the same as that for a motion to dismiss under Rule 12(b). *See EEOC v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001) (citation omitted). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must first comply with Rule 8(a)(2), which requires "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*,

355 U.S. 41, 47 (1957)).  A plaintiff is also obliged "to provide the grounds of his [or her] entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555 (citations and quotation marks omitted)).

The Supreme Court recently raised the bar for pleading requirements beyond the old "no-set-of-facts" standard of *Conley v. Gibson*, 355 U.S. 41, 78 (1957), that had prevailed for the last few decades.  *Courie v. Alcoa Wheel & Forged Products*, 577 F.3d 625, 2009 WL 2497928, *2 (6th Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)); *see also Twombly*, 550 U.S. at 555.  In *Iqbal*, the Supreme Court explained that a civil complaint only survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Iqbal*, 556 U.S. at 677.  The Sixth Circuit observed that this new standard is designed to screen out cases that, while not utterly impossible, are "implausible."  *Courie*, at *2.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  And although the Court must accept all well-pleaded factual allegations in the complaint as true, it need not "'accept as true a legal conclusion couched as a factual allegation.'"  *Twombly*, 550 U.S. at 555 (quoting

*Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see also Iqbal*, 556 U.S. at 678.

    B.   <u>Qualified Immunity</u>

The doctrine of qualified immunity means that "'[g]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Caldwell v. Moore*, 968 F.2d 595, 599 (6th Cir. 1992) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Defendant bears the burden of pleading qualified immunity, but plaintiff bears the burden of showing that the defendant's conduct violated a right so clearly established that a reasonable official in his position would have clearly understood that he or she was under an affirmative duty to refrain from such conduct.  *Sheets v. Mullins*, 287 F.3d 581, 586 (6th Cir. 2002) (citation omitted) (explaining that "[t]he ultimate burden of proof is on the plaintiff to show that the defendant is not entitled to qualified immunity").

The Supreme Court had established a two-part test in order to determine whether qualified immunity is applicable to a particular situation.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  The first part of the test involved a determination of whether the facts of the case, viewed in the light most favorable to the plaintiff, "show the officer's conduct violated a constitutional right."  *Id*.  If the first question was resolved in the affirmative, then the court would decide "whether the

right was clearly established." *Id.* If both questions are resolved in the affirmative, then the doctrine of qualified immunity does not apply and the case can proceed.

Later, the Supreme Court revisited its decision in *Saucier* and concluded that the mandatory order of the two part test for determining if qualified immunity applied was no longer sound based on several factors including judicial economy. *Pearson v. Callahan*, 555 U.S. 223, 227 (2009). While not modifying the factors that should be considered in such a decision, the Court held that sometimes it makes sense to allow the second part of the test to be decided first and that such a decision may resolve the controversy without having to address the first part of the test. *Id.* In *Pearson*, the § 1983 claim of the plaintiff was based on an allegedly unlawful search conducted by the defendant police officers. Without having to engage in the perhaps more complicated decision of determining whether plaintiff's constitutional rights had been violated, the Court found that the constitutional right claimed by plaintiff was not clearly established where lower court case law was consistent with the conduct of the officers and "principles of qualified immunity [should] shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law." *Id.* at 244-45. "This generally means that 'we are free to consider those questions in whatever order is appropriate in light of the issues before us.'" *Jones v. Byrnes*,

5

585 F.3d 971, 975 (6th Cir. 2009) (quoting *Moldowan v. City of Warren*, 570 F.3d 698, 720 (6th Cir. 2009)).

      C.    <u>Analysis and Conclusions</u>

        1.    Excessive Force

Count I of Plaintiff's First Amended Complaint (alternately "amended complaint") is entitled "Violation of the Fourth Amendment/42 U.S.C. § 1983 Excessive Force." In his First Amended Complaint ¶¶ 84-91, the action identified by plaintiff to support his claim is that defendant Stanford engaged in "threatening behavior" toward him. (First Amended Complaint, ¶¶ 90). According to defendants, plaintiff fails to identify any specific action, and offers only this generalized, conclusory allegation. Defendants maintain that Stanford's alleged comments to plaintiff do not rise to the level of an actionable constitutional violation. His alleged statement in the First Amended Complaint ¶ 69 "don't tell me what to fucking do" is not an offer of physical injury by force, even if plaintiff was scared by it. Furthermore, his alleged statement "you're in my house now, I can kick your ass" cannot be considered to have created a "well-founded" apprehension that contact was "imminent." The plain fact of the matter is that nobody touched plaintiff. The suggestion of force was phrased as a possibility, not a definite course of action and was accompanied by no physical indicia that force would be used. Defendant also points out that, while this case presents a

6

complete absence of any allegation of physical force, "the law allows police officers to use some force in the exercise of their duties without liability for assault and battery." *Meyer v. Woodward*, 617 F. Supp. 2d 554, 569 (E.D. Mich. 2008) (citations omitted). Police officers are immune from liability even for conduct that "would normally constitute a tort…" *Id*.

As to any argument that Stanford spit on plaintiff, defendants argue that this is not identified anywhere in Count II as the basis of the alleged excessive force claim. Further, defendant maintains that there are simply no allegations in the First Amended Complaint that Stanford maliciously spit in plaintiff's face.

The legal principles applicable to plaintiff's claim of excessive force are well-established. "[C]laims that law enforcement officers have used excessive force-deadly or not-in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989). In determining whether a constitutional violation based on excessive force has occurred, the Sixth Circuit applies "the objective-reasonableness standard, which depends on the facts and circumstances of each case viewed from the perspective of a reasonable officer on the scene and not with 20/20 hindsight." *Fox v. DeSoto*, 489 F.3d 227, 236 (6th Cir. 2007) (citing *Graham*, 490 U.S. at 395-96). "The calculus of reasonableness must embody allowance for the fact that police officers

7

are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97. "Relevant considerations include 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Fox*, 489 F.3d at 236 (quoting *Graham*, 490 U.S. at 396).

Plaintiff's excessive force claims are without merit.  First, as explained in *Brooks v. Pitchford*, 2015 WL 3466240, at *3 (W.D. Ky. June 1, 2015), under a totality of the circumstances test, verbal abuse may constitute part of a series of conduct that constitutes excessive force.  But "verbal abuse alone does not rise to the level of a constitutional violation." *Id*. (quoting *Schrader v. Patrick*, 1999 WL 266252, at *3 (6th Cir. 1999) (citation omitted)).  Further, verbal abuse alone does not convert reasonable force into excessive force. *Id*. (citing *Williams v. Sandel*, 433 Fed. Appx. 353, 362 (6th Cir. 2011) (quoting *Hudson v. Goob*, 2009 WL 789924, at *12 (W.D. Pa. 2009) ("The Rule is that if the physical force used is not itself excessive, i.e., is reasonable, then merely adding verbal threats or racial epithets cannot transform an otherwise non-excessive use of force into an unconstitutional use of excessive force.")).  Thus, the threats, by themselves, are insufficient to sustain an excessive force claim.

8

Even combined with the "spitting" claim, plaintiff's excessive force claim appears to be without merit. While there is a dearth of Sixth Circuit authority on the issue, many courts around the country have concluded that even intentional spitting does not support an excessive force claim. For example, in *Hairston v. Walker*, 2007 WL 4293072, *3 (S.D. Ill 2007), it was concluded that "[w]hile the Court does not condone the actions of Defendant Walker in allegedly spitting upon Plaintiff, this use of force can only be described as being de minimis." Similarly, a Louisiana federal court recently examined this issue in depth, concluding that "the alleged wrongdoing—spitting one time on Plaintiff—even if intentional, was not harmful enough to establish a constitutional violation." *Watson v. Dunn*, 2016 WL 1170752 (W.D. La. Jan. 12, 2016), report and recommendation adopted, 2016 WL 1230638 (W.D. La. Mar. 23, 2016). *Watson* cited a number of cases from around the country in support of this conclusion: *McBride v. Ausbie*, 2014 WL 5032720, at *3 (N.D. Tex. Oct. 8, 2014) (an officer's allegedly once spitting on a prisoner does not amount to a constitutional violation, nor does verbal threats, name calling, and threatening gestures by prison guards) (citing *Calhoun v. Hargrove*, 312 F.3d 730, 733 (5th Cir. 2002); *Robertson v. Piano City of Texas*, 70 F.3d 21, 24 (5th Cir. 1995); *Harrington v. Rush*, 2009 WL 1616010, at *2 (E.D. Ark. June 9, 2009)). According to the *Watson* court, because the plaintiff received no physical injury from the alleged "spit assault," he failed to

9

allege that he suffered an injury that was more than *de minimis*.  *Id*.

However, the foregoing cases involve excessive force claims under the Eighth Amendment, not the Fourth Amendment.  As explained in *Luna v. Bell*, WL 5592194, at *2 (M.D. Tenn. Oct. 10, 2013), to establish a violation of a person's Fourth Amendment right against excessive force, a plaintiff need only prove an officer's actions were not objectively reasonable in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation."  *Graham v. Connor*, 490 U.S. 386, 397 (1989).  By contrast, to prove an Eighth Amendment violation for excessive force, a plaintiff must meet the objective standard as well as satisfy a subjective component that "focuses on the state of mind of the prison officials."  *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011).  The only "spitting" case located by the undersigned involving the Fourth Amendment also include some other force.  *See Rodriguez v. McEady*, 2011 WL 5156111, at *3 (D. N.J. Oct. 28, 2011) ("Viewing the facts alleged in the light most favorable to Plaintiff, a reasonable jury could conclude that Defendant used excessive force in violation of the Fourth Amendment by 'pushing' Plaintiff into the police car and 'spitting on' Plaintiff after he was subdued and handcuffed.").

As explained in *Williams v. Lee*, 2015 WL 328158, at *5-6 (M.D. Tenn. Jan. 23, 2015), appeal dismissed (June 22, 2015), excessive force claims can be raised

10

under the Fourth, Eighth, and Fourteenth Amendments. *See Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013). "Which amendment should be applied depends on the status of the plaintiff at the time of the incident; that is, whether the plaintiff was a free citizen, convicted prisoner, or fit in some gray area in between the two." *Id*. The Fourth Amendment applies to free citizens, the Eighth Amendment applies to convicted persons and the Fourteenth Amendment applies to pretrial detainees. *Id*. "A plaintiff has a substantially higher hurdle to overcome to make a showing of excessive force under the Fourteenth Amendment as opposed to under the Fourth Amendment." *Id*. In *Aldini v. Johnson*, 609 F.3d 858, 867 (6th Cir. 2010), the Sixth Circuit established that "the dividing line between the Fourth and Fourteenth Amendment zones of protection was the probable cause hearing for warrantless arrests." *Id*. at 474. In *Williams v. Lee*, the incident in question took place following the plaintiff's probable cause hearing; thus, as a pre-trial detainee who has had a probable cause hearing, the claimed excessive use of force fell within the purview of the substantive Due Process Clause of the Fourteenth Amendment. *Id*.; *Aldini*, 609 F.3d at 867.

    In the present dispute, it appears from the factual recitations contained in both defendants' motion to dismiss and plaintiff's response brief to the motion wherein plaintiff adopts the facts of his First Amended Complaint, that the alleged spitting and threats occurred during a post-arrest interrogation. (Dkt. 28, Pg ID

11

352-353, n.3, Dkt. 32-2, Pg ID 456). Thus, while there was no probable cause *hearing*, there was a probable cause determination for the arrest. It appears that the Fourteenth Amendment Due Process clause applies to this excessive force claim.

The standard to apply under the Fourteenth Amendment is whether a defendant's conduct "shocks the conscience" so as to amount to an arbitrary exercise of governmental power. *Darrah v. City of Oak Park*, 255 F.3d 301, 306 (6th Cir. 2001). This standard, however, differs depending on the factual circumstances. *Burgess*, 735 F.3d at 473. "Typically, the Fourteenth Amendment's Due Process Clause protects pretrial detainees from excessive force that amounts to punishment, and the Eighth Amendment protects convicted prisoners from 'unnecessary and wanton infliction of pain.'" *Shreve v. Franklin Cnty., Ohio*, 743 F.3d 126, 133 (6th Cir. 2011) (citations omitted). Yet, "[t]he difference is this: An excessive-force claim under the Eighth Amendment requires that the plaintiff show that force was not 'applied in a good-faith effort to maintain or restore discipline,' but instead applied 'maliciously and sadistically to cause harm.' But an excessive-force claim under the Fourteenth Amendment operates on a sliding scale. Generally, to constitute a Fourteenth Amendment violation, an official's conduct must 'shock [ ] the conscience.'" *Id*. at 133-34 (citations omitted). Under the Fourteenth Amendment standard, "[w]here defendants are

12

'afforded a reasonable opportunity to deliberate ... their actions will be deemed conscience-shocking if they were taken with deliberate indifference towards the plaintiff's federally protected rights.'" *Burgess*, 735 F.3d at 473 (citations and internal quotation marks omitted).

In the view of the undersigned, and contrary to the position of the parties, the Fourteenth Amendment "shock the conscience" test applies to plaintiff's excessive force claims. Plainly, this standard is higher than even the Eighth Amendment standard and is certainly a higher standard than the Fourth Amendment. If intentional spitting does not constitute excessive force under the Eighth Amendment, then it certainly would not satisfy the requirements of the Fourteenth Amendment. Thus, the Court concludes that plaintiff's excessive force claim based on verbal abuse and spitting fails as matter of law.

>    2.    Search and Seizure

According to defendants, plaintiff's bedroom was searched pursuant to a search warrant that was reviewed and approved by a neutral and detached state magistrate, who determined there was probable cause to issue that warrant. Such decisions generally insulate police officers from liability. *See Hale v. Kart*, 396 F.3d 721, 725 (6th Cir. 2005) ("In §1983 actions, an officer ordinarily receives qualified immunity if he or she relies on a judicially secured warrant"). A § 1983 claim does lie, however, against an officer who obtains an invalid search warrant

by making, in his affidavit, material false statements either knowingly or in reckless disregard for the truth. *Donta v. Hooper*, 774 F.2d 716, 718 (6th Cir. 1985) (*per curiam*). Defendants assert, however, that only if a false statement was made knowingly and intentionally, or with reckless disregard for the truth, and if, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, is there a constitutional violation under the Fourth Amendment. *Franks v. Delaware*, 438 U.S. 154, 155-156 (1978). Defendants argue that, in this context, plaintiff must make a showing that Detective Stanford engaged in deliberate falsehoods or reckless disregard for the truth in omitting information from, or making false statements in, the affidavit. *See Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir. 1989). In that regard, defendants maintain that plaintiff makes only generalized statements about the validity of the warrant, and offers no details or factual support for the claim that the search of plaintiff's bedroom and the seizure of his property were illegal. According to defendants, the amended complaint offers no more than speculation that the searches were illegal and that the search warrant was deficient. (Dkt. 22, ¶¶ 97, 102).

In his First Amended Complaint, plaintiff alleges that the victim advised defendant Dortch that the alleged perpetrator who pointed a gun at him was not wearing gloves; was five feet/ten inches tall; was wearing a white mask (not a

hoodie) that covered the entire head with insect type/Spiderman eyes; was wearing
a white coat; and he did not know what type of pants or shoes were worn. (Dkt.
22, ¶ 17). Further, according to the amended complaint, defendants Fitzpatrick
and Stanford knew that plaintiff did not own or possess a white mask or white
jacket, and even though they knew that plaintiff had a black skeleton
sweatshirt/hoodie, it did not have insect-like eyes, nor did it look like the clothing
worn by the perpetrators of the party store robbery. (Dkt. 22, ¶ 18). Despite this
evidence which plaintiff says exonerated him, defendants failed to advise the
prosecutor of this and proceeded to falsely arrest plaintiff and have bogus criminal
charges pursued against him. *Id.*

Additionally, plaintiff alleges that the so-called "anonymous tip" was not
anonymous at all, but rather was provided to Fitzpatrick by an individual who had
been arrested for several armed robberies. (Dkt. 22, ¶ 24). According to the
"tipster," plaintiff was only aware of the party store robbery because of a
"YouTube" video he had seen and shown the tipster. However, defendant
Stanford failed to disclose this information in the Affidavit, thereby making the
Affidavit misleading and untruthful. (Dkt. 22, ¶ 25). In his Affidavit for a Search
Warrant, defendant Stanford failed to disclose that there was not an "anonymous
tip" and failed to disclose the identity of the tipster in the Affidavit; and failed to
disclose that this tipster was under arrest for robbing pizza delivery drivers. (Dkt.

15

22, ¶ 26).

Plaintiff also alleges that the Affidavit contained false and misleading information as to what was stated by the party store robbery victim.  According to the amended complaint, the victim described the person with the gun (who defendants said was plaintiff) as being tall and thin; wearing a white coat; and also wearing a white mask over his face with "spider man eyes."  This is in direct contradiction to the allegations in the Affidavit presented to the magistrate which indicated that the victim had described the perpetrator as five feet six inches tall; wearing a skeleton sweat shirt mask with the hood zipped in the front as a skull; and wearing blue jeans with a symbol on the upper right thigh.  (Dkt. 22, ¶ 47).

The Fourth Amendment requires that "no warrants shall issue, but upon probable cause."  In interpreting this provision, the Supreme Court has held that the information presented in support of a search warrant must be "believed or appropriately accepted by the affiant as true."  *Franks v. Delaware*, 438 U.S. 154, 165 (1978).  The review of the sufficiency of the evidence supporting probable cause is typically limited to the information presented in the four corners of the affidavit.  *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005).  "In order for a judicial officer to issue a warrant, law enforcement officials must present evidence from which the magistrate judge can conclude from the totality of the circumstances, 'including the "veracity" and "basis" of knowledge of persons

16

supplying hearsay information, there is a fair probability that …evidence of a crime will be found in a particular place.'" *United States v. Williams*, 224 F.3d 530, 532 (6th Cir. 2000) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).  In the context of criminal prosecutions, a warrant must be voided, and evidence obtained in a search purportedly conducted pursuant to it must be suppressed as unlawfully obtained, if (1) "a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit," and (2) "with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause." *Id*. at 155-56.

Similarly, a defendant in a § 1983 suit accused of an unlawful search "cannot rely on a judicial determination of probable cause [justifying the search] if that officer knowingly ma[de] false statements and omissions to the judge such that but for these falsities the judge would not have issued the warrant."  *Yancey v. Carroll County, Ky.*, 876 F.2d 1238, 1243 (6th Cir. 1989) (summary judgment standards applied).  In applying this test, the *Yancey* court considered actual deposition testimony from the judges who issued the challenged warrants, on the topic of whether those judges would have issued the warrants in the absence of the alleged false statements in the affidavits.  *Id*. at 1244-45.  In more recent cases the Sixth Circuit has treated the inquiry simply as "whether the accurate portions of [the] testimony suffice to establish probable cause."  *Vakilian v. Shaw*, 335 F.3d

17

509, 518 (6th Cir. 2003) (summary judgment standard applied). "What remains of the affidavit established probable cause if it provides the magistrate judge with a basis for finding there was a fair probability that contraband or evidence of a crime would be found at the stated location." *United States v. Mastromatteo*, 538 F. 3d 535, 545 (6th Cir. 2008) (citation, internal quotation marks and alteration omitted).

As explained in *Cotton v. Sassak*, 2009 WL 1664494, *6 (E.D. Mich. June 15, 2009), the "Sixth Circuit has treated the existence of the *Franks* factors – knowing falsehood plus a lack of probable cause when that falsehood is deleted from the affidavit – as also defeating any assertion of qualified immunity on the part of a § 1983 defendant." Specifically, the *Vakilian* court stated that "[t]o overcome an officer's entitlement to qualified immunity, . . . a plaintiff must establish: (1) a substantial showing that the defendant stated a deliberate falsehood or showed reckless disregard for the truth and (2) that the allegedly false or omitted information was material to the finding of probable cause." *Vakilian*, 335 F. 3d at 517. Thus, an officer accused of violating the Fourth Amendment by obtaining a warrant through an affidavit known to be false "can enjoy qualified immunity from suit under § 1983 only if he in fact did not violate the Fourth Amendment." *Cotton* at *6.

Plaintiff contends that, based on the above described allegations in the complaint, the search warrant was defective. In their initial brief, defendants rely

18

on the preliminary examination transcript, which the Court has determined cannot be considered in the context of this motion.  In the reply brief, defendants expound more on the factual allegations contained in the complaint, but again focus on the probable cause determination made at the preliminary examination, which is outside the purview of the Court's review of this matter under Rule 12(c).  Thus, in order to determine whether plaintiff has stated a claim for false arrest based on the exception set forth in *Donta v. Hooper*, the undersigned must look only at the four corners of the search warrant affidavit and the allegations in plaintiff's complaint.

Defendants argued at the hearing that the alleged misrepresentation relied on by plaintiff regarding the victim's description of the perpetrator was a mere "omission" which is not covered under *Franks*.[1]  According to defendants, they had the information from the video of the crime that was credible and provided information regarding the perpetrator's height, age, weight and race.  The affidavit is not defective, defendants maintain, because *the victim's* description is omitted. Rather, according to defendants, the best evidence of the perpetrator's description is the video itself.  Defendants further assert that even if the other alleged

---

[1]  The legal basis for defendants' theory that an "omission" does not "count" under *Franks* is unclear in light of the Sixth Circuit's clear statement in *Yancy* that a defendant in a § 1983 suit accused of an unlawful search "cannot rely on a judicial determination of probable cause [justifying the search] if that officer knowingly ma[de] false statements *and omissions* to the judge such that but for these falsities the judge would not have issued the warrant." *Id.* (emphasis added).

19

falsehood (regarding the anonymous tipster) were carved out of the affidavit, probable cause would still support the affidavit and any error in failing to include the anonymous tipster is harmless error. That is, even if the tip were not reliable, defendants followed up on it, and found evidence in plain sight connecting plaintiff to the robbery. Defendants point out that the plain view information was contained in the warrant and therefore, the affidavit still contains sufficient facts to supply probable cause without the information about the anonymous tip.

The affidavit supporting the search warrant provides in pertinent part:

> E.   Mr. Choi said the man with the shot gun was a Black Male in his late teens or early twenty's [sic]. He was about 506 [sic] tall and wearing a skeleton sweat shirt mask with the hood zipped in the front as a skull. The suspect's hands were exposed and he did not have gloves on. The suspect was wearing blue jeans with a symbol on his right upper thigh. The suspect was also wearing a sleeveless jacket over the skeleton sweat shirt with a symbol on the upper front left side.

> F.   Detective Fitzpatrick obtained a copy of the security video on 04/14/12 of the robbery and placed the video in Ann Arbor.com and local TV media.

> G.   On 04/23/12 this detective received a tip from an unknown caller on my work number. The caller said that Joseph Bailey committed the Broadway Party Store Robbery.
> 
> * * *

> L.   This detective saw, in plain sight on the door of the room [plaintiff's bedroom in his mother's

> home] was a black and white skeleton sweat shirt
> with a scull hood, and that zips in the front.

(Dkt. 28-3, Pg ID 407-408).  Reviewing the affidavit, however, it certainly appears

on its face that the description of the perpetrator in the affidavit *comes from Mr.*

*Choi*, *the victim*.  Paragraph E of the affidavit does not contain any information

suggesting that the description of the perpetrator was based on the video of the

crime.  Rather, it plainly appears that the description came from Mr. Choi himself.

Thus, defendants' "omission" theory is factually without merit.  Indeed, plaintiff's

complaint presents a direct contradiction and alleges that Mr. Choi's description of

the perpetrator is completely different from that described in the affidavit which

appears to be attributed to him.  (Dkt. 22, ¶ 47) (Mr. Choi "described the person

with the gun (who defendants said was plaintiff) as being tall and thin; wearing a

white coat; and had a white mask over his face with "spider man eyes.").  If the

physical description in the affidavit is false and misleading as alleged by plaintiff,

then the search is not, in fact, supported by probable cause.

The case law relied on by defendants supports this analysis.  For example, in

*Tossa v. Tardif*, 2015 WL 5679871, *7 (E.D. Mich. 2015), Judge Rosen concluded

that the plaintiff's complaint "lacks any allegations which, if proven, would

demonstrate that the search warrant issued by the state court was so lacking in

indicia of probable cause as to render an officers' reliance on the warrant

21

unreasonable."  In *Tossa*, the plaintiffs recognized that their complaint was insufficient because it merely alleged that the defendants entered their home based on a warrant unsupported by probable cause.  Thus, the plaintiffs offered certain amendments, which Judge Rosen concluded, even if true, did not demonstrate even a slight falsehood or reckless disregard for the truth in the affidavit supporting the search warrant.  *Id*. at *8.  Unlike in *Tossa*, here plaintiff's complaint sets forth a description of the perpetrator *by the victim* that directly and materially contradicts the description of the perpetrator *by the victim* in the affidavit, easily distinguishing the present case from *Tossa*.  In the view of the undersigned, plaintiff's allegations satisfy *Franks*' requirement of a substantial preliminary showing in the context of a Rule 12(c) motion.  Nothing in *Tossa* suggests that a plaintiff, in this context, must do more than offer allegations demonstrating a falsehood or reckless disregard for the truth such that what remains of the affidavit fails to establish probable cause.  *See United States v. Mastromatteo*, 538 F.3d at 545.  If the description of the perpetrator is false, then the evidence described in plaintiff's room does not appear to be connected to the crime.  Thus, there would be no basis for finding there was a fair probability that contraband or evidence of a crime would be found at the stated location.  *Id*. Under these circumstances, plaintiff has stated a claim for unlawful search and seizure under the Fourth Amendment and § 1983.

### 3.    False Arrest/Malicious Prosecution

Section 1983 claims based on theories of false arrest/false imprisonment[2] and malicious prosecution also derive from the Fourth Amendment and turn on the question of probable cause. *Frantz v. Village of Bradford*, 245 F.3d 869, 873 (6th Cir. 2001). *See also Gregory v. City of Louisville*, 444 F.3d 725, 748-49 (6th Cir. 2006) (cause of action for "malicious prosecution" under § 1983 is actually a Fourth Amendment claim to be free from pretrial detention without probable cause); *Stemler v. City of Florence*, 126 F.3d 856, 871-72 (6th Cir. 1997) (finding the existence of probable cause for arrest forecloses false arrest claims); *Baker v. McCollan*, 443 U.S. 137, 142-43 (1979) ("[b]y virtue of its 'incorporation' into the Fourteenth Amendment, the Fourth Amendment requires the States to provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty.").

An arrest pursuant to a facially valid warrant is normally a complete defense to a federal constitutional claim for false arrest and false imprisonment made

---

[2]  In *Wallace v. Kato*, 549 U.S. 384, 127 S.Ct. 1091, 1095 (2007), the Supreme Court noted the "overlap" between false imprisonment and false arrest claims and, after collectively referring to these claims as "false imprisonment," the Court explained how a false imprisonment claim differs from a malicious prosecution claim.  The Court explained that, "[r]eflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held pursuant to such process-when, for example, he is bound over by a magistrate or arraigned on charges." *Wallace v. Kato*, 127 S.Ct. at 1096.  After such legal process begins, "unlawful detention forms part of the damages for the 'entirely distinct' tort of malicious prosecution, which remedies detention accompanied, not by absence of legal process, but by wrongful institution of legal process." *Id*.

23

under § 1983. *Voyticky v. Vill. of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005) (citing *Baker v. McCollan*, 443 U.S. at 143-144). And, the law is settled that "where there is probable cause to prosecute, a § 1983 action for malicious prosecution will not lie." *Jolley v. Harvell*, 2007 WL 3390935, *6 (6th Cir. 2007), quoting *McKinley v. City of Mansfield*, 404 F.3d 418, 444-45 (6th Cir. 2005).

Again, the undersigned has concluded that plaintiff's amended complaint states a claim that the arrest was based on false and misleading information. Thus, defendants' claim, at this stage of the proceedings, that the arrest was based on a facially valid warrant does not carry the day. And here, the Court cannot determine whether there was probable cause to prosecute, because its review under Rule 12 (c) which requires a Rule 12(b)(6) standard, is limited to the amended complaint, which only attaches the search warrant - not the probable cause hearing transcript and exhibits. Notably, several of the cases on which defendants rely in support of their "facial validity/end of story" theory, involve summary judgment, not a motion to dismiss. *See Hansel v. Bisard*, 30 F.Supp.2d 981, 985-86 (E.D. Mich. 1998); *Yancey v. Carroll County*, Ky., 876 F.2d 1238, 1243 (6th Cir. 1989). Because plaintiff's complaint adequately alleges that the arrest warrant was based on false and misleading information, and the preliminary examination transcript cannot be considered, plaintiff has sufficiently stated a claim under Rule 12(b)(6).

24

4.   *Monell* Claim

Plaintiff alleges that the City maintained a custom or policy of failing to train/failure to supervise its officers regarding search and seizure, use of force, prosecution of criminal cases, and protection of constitutional rights.  Defendants contend, however, that these paragraphs are devoid of any factual development that would show a custom or practice of failure to train/failure to supervise, and amount to nothing more than a formulaic recitation of the elements of a cause of action.  According to defendants, plaintiff has failed to allege even the bare terms of an official policy or custom, as required to state a *Monell* claim under § 1983. Further, defendants argue because the individual defendants are entitled to qualified immunity, then so too are the municipal defendants.

According to plaintiff, municipal governments and their agencies are in fact liable under § 1983 for torts of a constitutional dimension, although there is a limitation in that "a municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory of liability.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).  Therefore, plaintiff maintains that, contrary to the arguments by Defendants of threadbare allegations, municipalities can be liable if some "official policy" or custom is the "moving force" behind a harm.  *Id.* at 694. In order to prove such policy or custom, "[t]he plaintiff can look to (1) the

municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).

Plaintiff asserts that he has more than sufficiently pleaded a claim against the City of Ann Arbor. In his Amended Complaint, plaintiff alleged that the City of Ann Arbor:

- failed to train and/or supervise its police officers so as to prevent violations of citizens' constitutional rights; [D/E #22, ¶ 121a]

- failed to adequately train and/or supervise police officers regarding reasonable seizures; [D/E #22, ¶ 121b]

- failed to adequately train and/or supervise officers regarding appropriate uses of force; [D/E #22, ¶ 121c]

- failed to adequately train and/or supervise officers regarding lawful prosecution of a charge; [D/E #22, ¶ 121d]

- failed to adequately train and/or supervise officers regarding thorough investigations of crimes and obtaining probable cause prior to arrests; [D/E #22, ¶ 121e]

- failed to control and/or discipline officers known to harass,

26

> intimidate, and/or abuse citizens; [D/E #22, ¶ 121f]
>
> • failed to supervise, review, and/or discipline officers whom
>   Defendant City of Ann Arbor knew or should have known were
>   violating or were prone to violate citizens' constitutional rights,
>   thereby permitting and/or encouraging its police officer to engage in
>   such conduct, and [D/E #22, ¶ 121g]
>
> • failed to require compliance of its officers and/or employees with
>   established policies and/or procedures and/or rules of the county and
>   discipline or reprimand officers who violate these established rules.
>   [D/E #22, ¶ 121h]

Plaintiff also asserts that he sufficiently alleged that the City of Ann Arbor's acts and/or omissions were the direct and proximate cause of plaintiff's injuries. According to plaintiff, at the pleading stage, he has sufficiently pled such a cause of action.  Plaintiff urges the Court to reject defendants' position that a plaintiff required to plead super hyper-technical facts at the pleading stage.  Plaintiff also asserts that if defendants' arguments were adopted, a plaintiff would virtually never be able to plead a *Monell* claim because it is not until discovery is permitted that personnel files, citizen complaints, internal affairs documents, policies, procedures, or training records can even be obtained.

Defendants are correct that if there no underlying constitutional violation,

then there can be no *Monell* liability.  As the court explained in *Ashcroft v. Iqbal*, 556 U.S. 662, 767 (2009), there is no vicarious or respondeat superior liability under § 1983.  Thus, for example, in the context of a municipality, a plaintiff cannot establish the municipality's liability unless he shows that "deliberate action attributable to the municipality directly caused a deprivation of federal rights." *Board of County Comm. v. Brown*, 520 U.S. 397, 415 (1997).   Rather, in the context of a claim against a municipality, a plaintiff must establish both (1) an underlying violation of his constitutional rights, and (2) that the violation resulted from the municipality's own deliberately indifferent policies.  *See Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992) (explaining that "proper analysis requires us to separate two different issues when a § 1983 claim is asserted against a municipality: (1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation."); *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of unconstitutionally excessive force is quite beside the point.").  Defendants' primary argument is that because the underlying claims fail, then so too must the *Monell* claim.  This is accurate as to the excessive force claim, but would not be so as the remaining claims at this juncture.

28

While defendants contended at the hearing that plaintiff's *Monell* allegations were too vague to survive a Rule 12(b)(6) motion, plaintiff pointed to case law in this district permitting similar claims to go forward at this stage of the litigation.  For example, in *Young v. City of Highland Park*, 2011 WL 5215154 (E.D. Mich. 2011), Judge Cleland denied a motion to dismiss a *Monell* claim that contained virtually identical allegations to those in plaintiff's amended complaint and held as follows:

> While Plaintiff's Count II, like his Count I, is far from thorough, it sets forth the bare minimum necessary to meet the pleading requirements of the Federal Rules. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949 (*quoting* Twombly, 550 U.S. at 570. Here, Plaintiff's complaint has stated just enough to "to raise a reasonable expectation that discovery will reveal evidence of [illegal conduct]." 550 U.S. at 556. Further discovery will flesh out additional details to support, or refute, this claim, but for purposes of Rule 8, Plaintiff's allegations are sufficient.

*Young*, at *3.  Similarly, other cases from the district have reached the same conclusion.  For example, the *Monell* allegations in *Estate of Romain v. City of Grosse Pointe Farms*, 2015 WL 1276278 (E.D. Mich. 2015) are quite similar.  In that case, the plaintiffs alleged that the City of Grosse Pointe Farms and the City of Grosse Pointe Woods "implicitly or explicitly, adopted and implemented careless and reckless policies, customs and practices that allowed the

29

unconstitutional conduct" and "failed to enforce proper hiring standards and practices, failed to adequately train and supervise their employees, and failed to enforce the proper disciplinary procedures necessary to prevent the unconstitutional conduct...." *Id*. at *15.  The defendants sought dismissal of the plaintiffs' municipal liability claim, arguing that "Plaintiffs' allegations are nothing more than threadbare recitals supported only by conclusory allegations and do not state a plausible claim of relief." *Id*.  Specifically, the defendants contended that the plaintiffs failed to identify a policy and show how the alleged injury was incurred because of such policy and failed to allege deliberate indifference to state a claim based on a failure to train, supervise, or enforce proper hiring standards. *Id*.

In *Romain*, Judge Parker concluded that the plaintiff's *Monell* allegations stated a claim under relevant Sixth Circuit precedent, citing *Petty v. Cnty. of Franklin*, 478 F.3d 341 (6th Cir. 2007).  She explained that in *Petty*, the plaintiff alleged in his complaint:

> 38. Plaintiff hereby incorporates by reference thereto the preceding thirty-seven (37) paragraphs as if fully rewritten herein.
>
> 39. Said acts by the individual Defendants County, Franklin County Sheriff's Department, Jim Karnes, John Doe # 1 and John Doe # 2, were proximately caused by certain customs and policies of Defendants County, Franklin County Sheriff's Department and Karnes,

30

including but not limited to, a failure to adequately and
reasonably train, supervise and discipline officers in such
a way to properly protect the constitutional rights of
citizens; and a specific set of policies established during
the days of the incidents described above, which had the
effect of permitting, encouraging, approving and
ratifying violations of the constitutional rights of
citizens, including Plaintif[f], as described above.

40. Defendants['] actions and conduct were the actual
and proximate cause of injury, damages and losses
sustained by Plaintiff.

*Id*. at *16 (quoting *Petty*, 478 F.3d at 347-48).  In *Petty*, the Sixth Circuit

disagreed with the district court's conclusions that these allegations "did not meet

the 12(b)(6) bar, because it 'identifies no official custom or policy of [the

municipality] with regard to his constitutional claim," and because it "fails to

come forward with any facts to demonstrate how, even if there were a custom or

policy of the county, [the plaintiff's] injuries are causally linked to the

[municipality]'s alleged failure to train and/or supervise."  *Romain*, at *16

(quoting *Petty v. Cnty. of Franklin*, 2006 WL 571871, at *4 (S.D. Ohio 2006)).

The Sixth Circuit wrote:

A "district court's dismissal of a civil rights complaint
on a 12(b)(6) motion is scrutinized with special care."
*Gazette* [*v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir.
1994]. In this case, the district court itself recognized
that it is not authorized to grant a motion to dismiss
under 12(b)(6) unless it is "clear that no relief could be
granted under any set of facts that could be proved
consistent with the allegations." [*Petty*, 2006 WL

31

> 571871, at *3] (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)). Given the allegations that [the plaintiff] makes in his complaint, it is not immediately clear what more [the plaintiff] could have alleged with respect to the policies that [the municipality] might or might not have. We wonder how [the plaintiff] would necessarily know, at the point of his complaint, and without the benefit of discovery, whether such a custom or policy might exist, and if it does exist, what its contours might be or how exactly it effected a violation of his constitutional rights.

*Petty*, 478 F.3d at 348.  In *Romain*, while Judge Parker acknowledged that *Petty* preceded the Supreme Court's decisions in *Twombly* and *Iqbal*, she also pointed out that some district courts in this Circuit have continued to rely on *Petty* in denying defendants' motions to dismiss plaintiffs' municipal liability claims.  *Id.* at *17 (citing *Stack v. Karnes*, 750 F.Supp.2d 892, 899 (S.D. Ohio 2010); *Medley v. City of Detroit*, 2008 WL 4279360, at *7-8 (E.D. Mich. 2008) (relying on *Petty* and indicating that "[a]ny suspicion about the type of policy or custom, if any, which resulted in the actions at issue here may be examined during discovery. Its existence may be challenged during summary judgment."); *cf. Vidal v. Lexington Fayette Urban Cnty. Gov't*, 2014 WL 4418113, at *3 (E.D. Ky. Sept.8, 2014) (finding that district courts have rejected *Petty* following *Iqbal* and *Twombly*) (citing *Hutchison v. Metro. Gov't of Nashville & Davidson Cnty.*, 685 F.Supp.2d 747, 751 (M.D. Tenn. 2010) ("In the context of Section 1983 municipal liability, district courts in the Sixth Circuit have interpreted *Iqbal's* standards strictly.");

32

*Scott v. Giant Eagle, Inc.*, 2013 WL 1874853, at *4 (N.D. Ohio May 3, 2013)).
Judge Parker concluded that the better course of action was to continue to follow
the Sixth Circuit's guidance in *Petty* until that court instructed otherwise. *Romain*,
at *17.

Under *Romain*, *Petty*, and *Young*, the undersigned concludes that plaintiff's
amended complaint sufficiently states a *Monell* claim as it relates to improper
search and seizure and false arrest/false imprisonment. As set forth above,
because plaintiff's excessive force claim fails as a matter of law, so too does any
*Monell* claim based on excessive force policies or failure to train regarding
excessive force.

## III.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that
defendants motion to dismiss be **GRANTED** in part as to plaintiff's excessive
force claim and related *Monell* claims and **DENIED** in part as to the remainder of
plaintiff's claims in the amended complaint.

The parties to this action may object to and seek review of this Report and
Recommendation, but are required to file any objections within 14 days of service,
as provided for in Federal Rule of Civil Procedure 72(b)(2) and E.D. Mich. Local
Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further
right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health*

*and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2); E.D. Mich. Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 1, 2016                    s/Stephanie Dawkins Davis
                                        Stephanie Dawkins Davis
                                        United States Magistrate Judge

**<u>CERTIFICATE OF SERVICE</u>**

     I certify that on <u>August 1, 2016</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

                                   <u>s/Tammy Hallwood</u>
                                     Case Manager
                                     (810) 341-7887
                                     tammy_hallwood@mied.uscourts.gov